J-S36002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RASHEEM JAMES DRUMMOND | : | |
| | : | |
| Appellant | : | No. 1219 MDA 2018 |

Appeal from the Judgment of Sentence Entered June 13, 2018
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0000984-2017

BEFORE: PANELLA, P.J., SHOGAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:        **FILED NOVEMBER 15, 2019**

Rasheem James Drummond appeals from the judgment of sentence imposed following his jury trial conviction of robbery and possession of a firearm without a license. We affirm.

Appellant and his victim, Cheng You, a Ph.D. student at Penn State, originally from China, met via the dating app Grindr.[1] They exchanged messages via Grindr for several weeks, at which point they decided to meet. Mr. You drove from State College to Harrisburg, where they met in a Rite Aid. At Appellant's request, Mr. You had brought sixty dollars in cash along to split the cost of a hotel room if things went well.

---

[1] Grindr is a dating app which markets itself as "the world's #1 FREE mobile social networking app for gay, bi, trans, and queer people to connect." **See** Google Play, https://play.google.com/store/apps/details?id=com.grindrapp.android&hl=en, last accessed 10/24/19.

[*] Retired Senior Judge assigned to the Superior Court.

Initially, the meeting went well; however, after Appellant attempted to get a room at two hotels, and found both to be too expensive, Mr. You decided to go home. Appellant gave Mr. You thirty dollars back, and told him that he would return the rest after Mr. You drove Appellant home.

When they arrived, Appellant went into the residence, then returned to the car where Mr. You was waiting for the remainder of his money back. Appellant climbed into the passenger's seat of the car, aimed a gun at Mr. You and demanded the remainder of Mr. You's cash and his cell phone. After receiving the cash and phone, Appellant exited the car and ran. Mr. You attempted to chase Appellant to recover his phone for directions home; however, when he approached, Appellant hit him in the head with the pistol and fled. A bystander called 911, police arrived and ultimately arrested Appellant.

Prior to trial, Appellant challenged his competency to stand trial. At the hearing, the competency evaluator stated that Appellant was able to understand the charges against him, but concluded that he was incompetent to stand trial because he was not able to participate in his defense. The trial court however, found that Appellant was manipulative in order to receive what he wanted and made conscious choices to act the way in which he did. Therefore, the court found Appellant competent to stand trial.

Appellant filed his first *pro se* correspondence complaining about the performance of Erin Hayes, Esq., his court appointed attorney, in August 2017. That next month, in September, the court granted Attorney Hayes's petition

to withdraw and appointed Jennifer Tobias, Esq., as conflict counsel. One month later, Appellant sent a *pro se* correspondence to the court complaining about the performance of Attorney Tobias. Three months later, in January 2018, the court granted Attorney Tobias's petition to withdraw, and appointed David Hoover, Esq., to represent Appellant.

Three months after that, and shortly before trial was to begin, Appellant claimed that he had irreconcilable differences with Attorney Hoover. After calling Appellant's sister and grandmother, at Appellant's request, to inquire as to whether they were coordinating retaining private counsel (they were not), the trial court denied Appellant's right to a continuance of the trial date and appointed Attorney Hoover as standby counsel during trial.[2]

The jury found Appellant guilty of robbery and carrying a firearm without a license. The trial court denied Appellant's post-trial motions. This timely appeal followed.

Appellant raises seven issues on appeal.

A. Whether the [trial] court erred in allowing Appellant's trial counsel, attorney David Hoover, to act as standby counsel after granting attorney Hoover's motion to withdraw?

B. Whether the [trial] court erred in denying Appellant's request for new appointment of counsel at trial?

C. Whether the [trial] court erred in denying Appellant's request for a continuance of his trial date after Appellant's appointed counsel was granted permission to withdraw?

---

[2] The court appointed new counsel to represent Appellant for his post-sentence motions and his direct appeal.

D. Whether the Commonwealth failed to present sufficient evidence to sustain Appellant's conviction for carrying a firearm without a license?

E. Whether the [trial] court erred in finding Appellant competent to stand trial at Appellant's competency hearing?

F. Whether the [trial] court erred in denying Appellant's post-sentence motion where the Commonwealth failed to present sufficient and weighty evidence to sustain Appellant's convictions?

G. Whether Appellant's waiver of his right to testify was not knowing, voluntary, or intelligent?

Appellant's Brief, at 8 (questions re-ordered for ease of disposition; unnecessary capitalization omitted).

In his three first issues, Appellant challenges the trial court's decision to grant Attorney Hoover's request for permission to withdraw from representation.[3] Specifically, he claims that granting counsel permission to withdraw, without appointing a new, fourth counsel, or granting a continuance of the trial date to permit him to retain private counsel, resulted in his being denied his right to counsel. In addition, he claims that his waiver of his right to counsel was not knowing, intelligent, or voluntary. **See** Appellant's Brief, at 24-31. We disagree.

"A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." **Commonwealth v. Harris**, 200 A.3d 524 (Pa. Super. 2018) (citation omitted). Appointment of counsel however, is within the

---

[3] We discuss Appellant's first three issues together for ease of disposition, and note that Appellant likewise combined these issues in his brief.

discretion of the trial court, as such we review such appointment for an abuse of discretion. **See** Pa.R.Crim.P. 121(D). Finally, granting or denying a continuance request is also within the discretion of the trial court. **See Commonwealth v. Sandusky**, 77 A.3d 663, 671 (Pa. Super. 2013).

"The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his or her defense." **Commonwealth v. Lucarelli**, 971 A.2d 1173, 1178 (Pa. 2009) (citations omitted). However, an accused also enjoys the right to self-representation, and may either waive or forfeit his right to counsel. **See id.** at 1179. "Waiver is an intentional and voluntary relinquishment of a known right. By contrast, forfeiture . . . does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's extremely serious misconduct or extremely dilatory conduct." **Id.** (citations and internal quotation marks omitted). Finally, "Pa.R.Crim.P. 121(D) authorizes a judge to appoint standby counsel when it determines that a defendant appropriately waives the right to counsel." **Pub. Defender's Office v. Venango Cty. Court of Common Pleas**, 893 A.2d 1275, 1281 (Pa. 2006).

In **Commonwealth v. Thomas**, this Court found that the appellant forfeited his right to counsel through a pattern of misconduct including threats, abuse, and failure to collaborate in his defense. **See** 879 A.2d 246, 258 (Pa. Super. 2005). There the trial court had appointed five different attorneys to represent the appellant. **See id.**

- 5 -

Presently, Appellant engaged in a similar course of misconduct and dilatory conduct. Attorney Hoover, the **third** attorney appointed to represent Appellant, requested to withdraw his appearance because Appellant repeatedly accused him of being a racist and refused to meet with him to prepare for trial. *See* N.T. Hearing, 4/18/18, at 9-10, 13. In addition, based on its observations of Appellant throughout the pre-trial process, the trial court found that Appellant had a history of disruptive behavior as a method of delaying proceedings. *See* N.T. Hearing, 1/23/18, at 10-11.[4] Upon review, we similarly conclude that Appellant forfeited his right to counsel based on his misconduct and extremely dilatory conduct. Accordingly, the trial court did not err when it granted Attorney Hoover permission to withdraw.

We also conclude that the trial court did not abuse its discretion when it appointed Attorney Hoover as standby counsel. Attorney Hoover was familiar with the case, and ready to proceed to trial, whereas appointing a new standby attorney would cause a lengthy delay for that attorney to become ready to render assistance. Moreover, we note that the trial court appointed new counsel immediately after trial for all post-trial representation.

Finally, we conclude that the trial court did not abuse its discretion when it denied Appellant's requested continuance. Appellant demonstrated a history of manipulative behavior to delay trial. Therefore, the court was well within

_____

[4] During the hearing, the Commonwealth explained that in one of Appellant's previous trials in federal court, Appellant had gone through eleven different defense attorneys in a similar delay of proceedings. *See* N.T. Hearing, 4/18/18, at 4.

its authority to deny Appellant's continuance requested on the eve of trial. Appellant's first three issues are meritless.

In his fourth issue, Appellant challenges the sufficiency of the evidence presented to support his conviction of carrying a firearm without a license. Specifically, he claims that the Commonwealth failed to prove that Appellant either concealed the firearm, or carried the firearm in a vehicle. We disagree.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Best**, 120 A.3d 329, 341 (Pa. Super. 2015) (quotations and citations omitted).

In relevant part, section 6106(a)(1) of the Crimes Code provides that:

> [A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1).

Here, the Commonwealth presented evidence that after returning to Mr. You's car and climbing into the passenger seat, Appellant pulled out a gun and demanded money, threatening to shoot Mr. You. Mr. You testified that he did not see Appellant carrying anything while he walked up to the car, and that after he handed over his money and phone, Appellant ran out of the car. *See* N.T. Trial, 4/23/18, at 150-52.

Accordingly, viewing all evidence in the light most favorable to the Commonwealth as verdict winner, as we are required to do by our standard of review, we conclude that the Commonwealth introduced sufficient evidence to prove Appellant's guilt. Based on Mr. You's testimony, it is a reasonable inference that Appellant both concealed the firearm on his person while walking to the car, and that he had been in the vehicle when he threatened Mr. You. Therefore, Appellant's fourth issue is meritless.

In his fifth issue, Appellant claims that the trial court erred when it found him competent to stand trial. Specifically, Appellant asserts that Brett DiGiovanna, M.D., opined that although Appellant was able to understand the nature of the proceeding, he was unable to participate and assist in his own defense. Consequently, Appellant argues that Dr. DiGiovanna's testimony, in addition to Appellant's "self-sabotaging behavior," required the trial court to find him incompetent to stand trial. Appellant's Brief, at 37; *see id.* at 35-37. We disagree.

A defendant is presumed competent and it is his burden to show otherwise, the determination of which is within the sound discretion of the trial court. When a competency hearing takes place, incompetency may be established by a preponderance of the evidence. The sensitive nature of competency determinations requires the appellate courts to afford great deference to the conclusions of the trial court, which has had the opportunity to observe the defendant personally. When the record supports the trial court's determination, we will not disturb it.

**Commonwealth v. Stevenson**, 64 A.3d 715, 720 (Pa. Super. 2013) (citations omitted).

In order to rebut the presumption that he is competent, a defendant must prove by a preponderance of the evidence that he "was either unable to understand the nature of the proceedings against him or to participate in his own defense." **Commonwealth v. Santiago**, 855 A.2d 682, 694 (Pa. 2004) (citation omitted).

Here, the trial court stated:

While we note that the results of [Appellant's] competency evaluation found him competent under only one prong of the test, we stand by our decision ruling that [Appellant] was competent. . . . During [Appellant's] competency evaluation, he was able to give coherent accounts of the alleged charges against him. More importantly, it was clear to this court that it was possible that [Appellant] made a conscious choice to present himself as incompetent. More specifically, when the competency evaluator provided in his report that he believed that all of the subjective information provided by [Appellant] had questionable validity. Multiple times throughout the hearing and the competency report, it was made apparent that [Appellant] could be manipulative in order to receive what he wanted, exaggerate his symptoms and exaggerate his situation. Most importantly, Dr. Martin's [another mental health professional whose impressions Dr. DiGiovanna relied upon in his expert report] opinion regarding [] Appellant's competency very clearly indicated that [] Appellant attempts to game the system to get what he wants.

Trial Court Opinion, 12/18/18 at 8 (record citations, quotation marks, and unnecessary capitalization omitted).

Upon review, we conclude that the record supports the trial court's determination that Appellant was competent to stand trial. Appellant's disruptive behavior at select times, such as passing the prosecutor an envelope of feces during a pretrial hearing, **see** N.T. Hearing, 4/19/18, at 4, and professional behavior at others, such as his general professionalism while representing himself *pro se* during trial, **see generally** N.T. Trial, 4/23/18; N.T. Trial, 4/24/18, demonstrate his attempts to manipulate the system. The trial court had copious reasons to find that Appellant had not met his burden of proving his incompetence. Appellant's fifth issue is meritless.

In his sixth issue, Appellant challenges the weight of the evidence to support his conviction.[5] Specifically, he argues that because of inconsistent testimony and incredible witnesses, the evidence was so weak and inconclusive that the verdict was against the weight of the evidence. We disagree.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of

---

[5] Neither the question presented nor the discussion portion of Appellant's brief specifies whether Appellant is challenging the weight of the evidence to support his robbery or carrying a firearm conviction. However, in his concise statement of errors complained of on appeal, Appellant specifically claims that the verdict for the charge of robbery was contrary to the weight of the evidence. Accordingly, we limit our discussion to the robbery charge.

the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Orie*, 88 A.3d 983, 1015 (Pa. Super. 2014) (citations and quotation marks omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.*

When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

*Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (citations omitted).

Here, after a two-day trial, the jury found Appellant guilty of robbing Mr. You. Upon review, the trial court opined that there were not glaring abnormalities from Appellant's trial such that the verdict would shock one's sense of justice. We find no abuse of discretion in the trial court's denial of Appellant's challenge to the weight of the evidence. Appellant's sixth issue is meritless.

Finally, in his seventh issue, Appellant claims that his waiver of his right to testify at trial was not knowing, intelligent, or voluntary. He argues that

based on his alleged incompetence, he was not able to knowingly, intelligently, and voluntarily waive his right to testify. *See* Appellant's Brief, at 42-45. We disagree.

"The right of an accused to testify on his own behalf is a fundamental tenet of American jurisprudence and is explicitly guaranteed by Article I, Section 9 of the Pennsylvania Constitution." *Commonwealth v. Nieves*, 746 A.2d 1102, 1105 (Pa. 2000) (citation omitted). "As this is an issue involving a constitutional right, it is a question of law; thus, our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Baldwin*, 58 A.3d 754, 762 (Pa. 2012) (citation omitted).

Here, Appellant's argument is essentially a renewed claim that the trial court should have found him incompetent to stand trial. This claim is belied by the record, where, after Appellant clearly stated that he did not intend to testify, the trial court conducted a full colloquy ensuring that Appellant understood his right and was waiving his right to testify knowingly, intelligently, and voluntarily. *See* N.T. Trial. 4/23/18, at 180-82. Appellant initially claimed that he lacked competence to make a knowing and intelligent waiver; however, after consulting with standby counsel, clearly stated that he did not want to testify. *See id.* at 184. To the extent that Appellant again claims he was incompetent to make legal decisions, we again conclude the trial court did not err or abuse its discretion in finding that Appellant's claimed incompetence merely reflected his attempts to manipulate the system.

Upon review, we conclude that Appellant's constitutional right not to testify was not infringed upon. The record reflects that after discussing the matter with standby counsel, Appellant made a knowing, intelligent, and voluntary waiver of his right to testify. *See id.* at 180-82, 184. Accordingly, Appellant's final claim is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2019